UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| **Timothy Lilliberg,** | **Civil No. 04-4031 (DWF-JJG)** |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| **Jo Anne B. Barnhart,** | |
| Defendant. | |

JEANNE J. GRAHAM, United States Magistrate Judge

Plaintiff Timothy Lilliberg petitions for judicial review of the final decision of the Commissioner of Social Security (Commissioner), who denied his application for disability benefits under the Social Security Act. The matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1(c). The parties have submitted cross motions for summary judgment. For the reasons set forth below, this Court recommends that the Commissioner's motion be granted and the case be dismissed with prejudice.

**I.     BACKGROUND**

Mr. Lilliberg (Lilliberg) has applied for social security disability benefits three times. The first application, from June 1993, was denied initially in September 1993. The second application, from September 1994, was denied initially in January 1995 and on reconsideration in April 1995. (Tr. at 33.) Lilliberg demanded a hearing on this application, which was held before an Administrative Law Judge (ALJ) in January 1996. By a decision on September 13, 1996, the ALJ ruled that Lilliberg was not disabled and was not eligible for disability benefits. (Tr. at 395, 409.) Lilliberg did not take further action

to contest his first or second applications.

Lilliberg submitted his third and current application for disability benefits on March 25, 1998. This application was denied initially on July 7, 1998 and on reconsideration on October 30, 1998. Lilliberg demanded a hearing, which was held before an ALJ on May 20, 1999. (Tr. at 33.) By a decision on August 17, 1999, the ALJ ruled that Lilliberg was capable of work and was not eligible for disability benefits. (Tr. at 42-44, 51-52.) Lilliberg sought review from the Appeals Council of the Social Security Administration (Appeals Council), which by its letter of March 16, 2001, upheld the decision of the ALJ. (Tr. at 8-9.)

Lilliberg petitioned for judicial review of the decision by the ALJ on May 16, 2001. The matter came before Magistrate Judge Susan R. Nelson on cross motions for summary judgment. The ensuing report and recommendation of May 14, 2002 determined that the ALJ lacked substantial evidence regarding Lilliberg's psychological impairments. The report and recommendation further stated that, due to the inaccurate assessment of his impairments, the testimony of a vocational expert was flawed. (Tr. at 758, 761, 771.) By its order of April 12, 2002, the district court adopted the report and recommendation, reversing and remanding to the ALJ for further proceedings. (Tr. at 756.)

Additional hearings were held before the ALJ on February 14, 2003 and December 8, 2003. (Tr. at 1028, 1069.) These hearings included expert testimony by Dr. Harry Hoberman, who specifically addressed issues regarding Lilliberg's psychological impairments. (Tr. at 738, 1052, 1104.) By a decision on March 1, 2004, the ALJ once again ruled that Lilliberg was capable of work and was not entitled to disability benefits. (Tr. at 753-74.) The Appeals Council upheld this decision by its letter of July 16, 2004. (Tr. at 704.) Lilliberg petitioned for judicial review of the decision by the ALJ on September 7,

2004, and the matter is now before this Court on the parties' cross motions for summary judgment.

## II.   DISCUSSION

When reviewing the findings of the ALJ, a court considers whether that decision is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003). Substantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). The court must consider evidence that both favors and detracts from the decision. *Kelley v. Callahan*, 133 F.3d 583, 587 (8th Cir. 1998). So long as more than a scintilla of evidence supports the decision, that decision shall be affirmed, even though substantial evidence may support a contrary outcome. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001).

### 1.   Opinion of Non-Examining Physician

Lilliberg claims that the ALJ lacked substantial evidence on his physical and psychological impairments because the ALJ relied on the opinion of a non-examining physician. (Pl.'s Mem. at 6.) As a general rule, the opinion of a treating or examining physician is entitled to substantial weight. But this opinion does not have conclusive weight, and it must be supported by medically acceptable clinical or diagnostic data. *Kelley v. Callahan*, 133 F.3d 583, 589 (8th Cir. 1998).

Where a specialist offers an opinion in the specialist's field of expertise, it is entitled to more weight than the opinion of a nonspecialist. *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996). Thus where a treating or examining physician offers an opinion on the psychological impairments of a patient, but that physician does not specialize in mental health, an ALJ may accord less weight to that opinion. *Metz v. Shalala*, 49 F.3d 374, 377 (8th Cir. 1995).

Where a physician has not treated or examined a patient, the opinion of that physician, standing alone, does not constitute substantial evidence. *Nevland v. Apfel*, 402 F.3d 853, 858 (8th Cir. 2000). The persuasiveness of such an opinion is reduced if it directly contradicts the opinion of a treating or examining physician. *Turpin v. Bowen*, 813 F.2d 165, 170 (8th Cir. 1987).

Here Lilliberg argues that the ALJ disregarded the physical restrictions imposed by a recent examining physician. (*Id.* at 7-8.) Lilliberg also raises a separate and distinct argument that the ALJ disregarded a psychological assessment by a primary care physician. (*Id.* at 7, 12.) For the period at issue here, Lilliberg's physical and mental health history may be summarized as follows.

As part of a forensic evaluation of his eligibility for disability benefits, Lilliberg received his first mental health assessment from Dr. H. Kent Newman (Newman), a psychologist, in March 1996. Following an examination, Newman offered a forensic diagnosis of dysthymia, alcohol abuse, paranoid personality disorder, and pain disorder associated with psychological factors and general medical condition. Based on the personality disorder, Newman opined that Lilliberg was "likely to act out" and faced significant impairments in the workplace. (Tr. at 386, 390.)

Following this assessment, Lilliberg began therapy with Newman and his associate Dr. Gary Cowan, a psychiatrist. Lilliberg visited either Cowan or Newman five times through May 1996. The records from these appointments indicate that Newman diagnosed Lilliberg with paranoid personality disorder, depressive disorder not otherwise specified, and pain disorder associated with psychological factors and general medical condition. Cowan arrived at a different diagnosis, finding no somatic pain disorder and ruling out paranoid personality disorder. These records do not otherwise disclose whether, during this brief period of treatment, Newman had reason to reevaluate his prior assessment of Lilliberg's

ability to work. (Tr. at 498-509.)

Dr. Marcus Desmonde (Desmonde), a psychologist, undertook another forensic evaluation in May 1998. Following an examination, he diagnosed Lilliberg with episodic alcohol abuse, adjustment disorder with depressed mood, and pain disorder associated with psychological factors and general medical condition. Desmonde concluded that Lilliberg

> does appear to have the mental capacities to concentrate on and understand instructions, but may have difficulty carrying out tasks with reasonable persistence and pace

and added that

> [h]e does appear capable of responding appropriately to supervisors, co-workers and the general public, but he may have difficulty tolerating stress in a competitive workplace.

(Tr. at 513, 515.)

Dr. Paul Berry (Berry), a psychiatrist, examined Lilliberg and filled out an assessment form in June 1998. The form does not request a specific diagnosis, but generally indicates that Lilliberg suffered from affective disorders, including depression and alcohol abuse. Based on this assessment, Berry determined that Lilliberg had slight to moderate impairments to his ability to work. (Tr. at 599, 602, 609-10.)

Dr. Larry Lemaster, who had been Lilliberg's primary care physician since the 1980s, prepared a vocational assessment in May 1999. (Tr. at 151, 698, 937.) Lemaster had previously directed treatment and pain management for back pain, radial nerve palsy, and an inguinal hernia. (Tr. at 514, 564, 567, 940.) Lemaster concluded that in an eight hour workday, Lilliberg could sit for four hours and stand for four hours, but was not required to alternate between sitting and standing to relieve pain. (Tr. at 701.) Regarding mental health issues, Lemaster reported that Lilliberg would have moderate to extreme difficulty

handling the social environment of the workplace. (Tr. at 698-700.) Aside from once observing that Lilliberg had difficulties with depression, Lemaster was not otherwise involved in the diagnosis or treatment of mental health issues. (Tr. at 695.)

Another forensic assessment was carried out by Dr. Donald Wiger (Wiger), a psychologist, in March 2003. Following an examination, Wiger generally diagnosed Lilliberg with depression, pain disorder, adjustment disorder, and a history of alcoholism. On a vocational assessment form, Wiger determined that Lilliberg would have mild to moderate difficulties in the social environment of the workplace. (Tr. at 976, 980.)

Lilliberg first visited Dr. Ryan Woods (Woods), a doctor of osteopathy, in September 2003. (Tr. at 1001.) Woods prepared a vocational assessment for Lilliberg in November 2003. Regarding physical limitations, Woods determined that Lilliberg had substantial difficulties lifting and carrying, and added that he should never stoop, kneel, or crouch. (Tr. at 1022-23). Woods further reported that Lilliberg had little or no ability to handle the social environment of workplace. (Tr. at 1019-20.) Aside from referring Lilliberg to a psychiatrist, Woods was not involved in the treatment of mental health issues. (Tr. at 1001.)

At the hearings before the ALJ in February and December 2003, Dr. Harry Hoberman (Hoberman) testified about Lilliberg's psychological impairments. Hoberman did not examine Lilliberg and based his opinion entirely on his review of Lilliberg's medical records. (Tr. at 1052, 1104.) Citing the examinations by Desmonde and Wiger, Hoberman determined that Lilliberg was able to do some work and that his psychological impairments were not so severe as to require disability benefits. (Tr. at 1052, 1104.) Hoberman expressly discredited the psychological assessment by Lemaster, finding that Lemaster lacked expertise and did not undertake a suitable mental health examination. (Tr. at 1115.)

To determine whether Lilliberg had any psychological impairments, the ALJ cited the assessments by Newman, Cowan, Desmonde, and Wiger. (Tr. at 739-41.) Based on these assessments, the ALJ found that Lilliberg would have difficulty with many types of work, but was not so impaired that work was precluded. (Tr. at 747.) Adopting the opinion of Hoberman, the ALJ also found that Lemaster did not credibly assess Lilliberg's mental health. (Tr. at 749.) The ALJ concluded that Lilliberg had the ability to work in a low stress environment, with no public contact and brief or superficial conduct with others. (Tr. at 754.)

In the findings on psychological impairments, the ALJ relied not only on the opinion of Hoberman, but also considered the assessments of four other experts who had examined Lilliberg. Two of these physicians were also involved in Lilliberg's treatment. These assessments, particularly that of Desmonde, indicate that mental health issues were an obstacle to Lilliberg's employment. But none of the assessments categorically state that Lilliberg is unable to do any work. Because this evidence is relevant and reasonably supports the conclusion, the decision of the ALJ is supported by substantial evidence.

Although Lemaster was Lilliberg's primary care physician, and Woods later had a similar relationship, these physicians have no documented expertise treating psychological disorders. And there is no indication, when they opined on Lilliberg's psychological impairments, that either physician considered the applicable clinical or diagnostic data. Given the reduced persuasive weight of this evidence, the ALJ properly marshaled substantial evidence from the contrary opinions of the other physicians.

To determine physical restrictions, the ALJ reviewed the treatment Lilliberg had received for back pain, inguinal hernia, radial nerve palsy, and other issues. (Tr. at 735-38.) Taking this history into consideration, the ALJ principally relied on the November 1999 vocational assessment by Lemaster. The

ALJ also observed that this assessment was consistent with the treatment Lilliberg received through 2003. Although Woods made a contrary assessment, the ALJ discounted its relevance, noting that Woods had only treated Lilliberg briefly compared to other physicians. (Tr. at 750.) The record is otherwise replete with relevant evidence that reasonably supports the ALJ's findings on physical restrictions. Thus these findings are also supported by substantial evidence.

### 2.     Somatoform Disorder

Lilliberg also argues that the ALJ failed to examine evidence of his somatoform disorder. (Pl.'s Mem. at 7.) He asserts that, by failing to address this issue, the ALJ did not properly assess whether the disorder was so severe as to require disability benefits.

Somatoform disorders are a general class of psychological disorders where a person reports suffering from a medical condition that does not actually exist. When a pain disorder is associated with psychological factors, then it is classified as a somatoform disorder. *See generally Diagnostic and Statistical Manual of Mental Disorders* 458 (4th ed. 1994).

When a claimant attributes pain to a somatoform disorder, the ALJ cannot necessarily reject the claimant's subjective experience of pain, but must consider the impact such pain will have on the claimant's ability to work. *Metz v. Shalala*, 49 F.3d 374, 376 (8th Cir. 1995). Where the claimant asserts a somatoform disorder, but reports of pain are inconsistent and daily activities are not impaired, an ALJ has substantial evidence supporting the claimant's ability to undertake light work. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001); *Hutton v. Apfel*, 175 F.3d 651, 655 (8th Cir. 1999).

During the period at issue here, Lilliberg frequently complained about pain from his inguinal hernia and other prior injuries. Although Lilliberg often received prescription painkillers, he rarely received

prescription narcotics. (Tr. at 618, 695, 939.) Notwithstanding his complaints of pain, Lilliberg maintains his household and general hygiene, and he runs errands and engages in other activities on a daily basis. (Tr. at 513, 973-74.) The record also indicates that, for approximately ten months in 1999 and 2000, and for approximately fourteen months in 2002 and 2003, Lilliberg did not seek treatment for pain. (Tr. at 940, 945, 964, 989.)

Here the ALJ acknowledges that Lilliberg has been frequently diagnosed with pain disorder, whether associated with psychological disorder, a general medical condition, or both. (Tr. at 735, 738, 743.) And the ALJ concluded that Lilliberg suffered from a pain disorder. (Tr. at 735.) Noting Lilliberg's daily activities and reciting the psychological assessments, the ALJ concluded that the level of pain did not prevent light work. (Tr. at 742, 744, 748.) Relevant evidence shows that Lilliberg did not consistently suffer debilitating pain, and that Lilliberg maintained an active daily routine. Thus the decision of the ALJ is supported by substantial evidence.

Lilliberg counters that this decision does not sufficiently address the effect of his somatoform disorder. But there are two defects in this argument. First, the ALJ found that Lilliberg had been diagnosed with pain disorder associated with a psychological disorder, which plainly is a form of somatoform disorder. So the ALJ did not disregard this issue. Second, the ALJ was not required to determine whether Lilliberg was suffering pain objectively or subjectively. The relevant inquiry was, to the extent that Lilliberg was experiencing pain, whether this pain impaired his ability to work. *See Metz*, 49 F.3d at 378; *DeMaris v. Barnhart*, 306 F.Supp.2d 863, 869 (N.D.Iowa 2004). Given the limits of review for substantial evidence, it is not necessary to consider whether the ALJ should have addressed somatoform disorder further.

    **3.**    **Vocational Hypothetical**

9

Lilliberg asserts that the ALJ lacked substantial evidence when determining that modified light work was available for Lilliberg. (Pl.'s Mem. at 13.) Lilliberg essentially challenges the opinion of the vocational expert and asserts that this opinion cannot supply substantial evidence. (*Id.* at 14.) Instead of attacking the evidence supporting the opinion of the vocational expert, Lilliberg argues that the opinion does not adequately address the limitations identified in certain regulations and administrative rulings.

When determining appropriate employment for a claimant with physical restrictions, the ALJ is required to assess the level of exertion required for that employment. This level of exertion is usually classified under 20 C.F.R. § 416.967, which supplies categories such as light work and sedentary work. This regulation provides in relevant part,

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifing or carrying articles like docket files, ledgers, and small tolls. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary . . . .
>
> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as . . . inability to sit for long periods of time.

In Social Security Ruling 83-12, the Social Security Administration recognized that the categories in § 416.967 do not necessarily cover every contingency. The ruling directed that, where a claimant has restrictions that precludes full employment in a certain category, the ALJ "consider[s] the extent of any erosion of the occupational base" when determining the scope of available employment. Thus an ALJ may

determine that a claimant is only capable of performing a modified range of light or sedentary work.

Here the ALJ determined in relevant part that Lilliberg could lift and carry twenty pounds occasionally and ten pounds frequently; that he could stand and walk up to two hours, but no more than ten minutes at a time, in an eight hour workday; and that he could sit with a position change every thirty minutes. (Tr. at 754.) These limitations formed the basis of a hypothetical that the ALJ posed to a vocational expert at the December 2003 hearing. The expert testified that, under this hypothetical, a person could be employed in hand packaging or small product assembly. The expert further estimated that there were 30,000 such jobs in Minnesota, and that Lilliberg would be qualified for a third of these positions. (Tr. at 1118-20.) On cross examination, the expert conceded that the sitting and standing restrictions "severely limit" the number of available jobs. (Tr. at 1121.) The ALJ adopted the opinion of the vocational expert, concluding that Lilliberg could perform "a significant range of modified light work." (Tr. at 754.)

The vocational expert's testimony is the only evidence regarding the availability of work for Lilliberg. Counsel for Lilliberg challenged many of the facts underlying the hypothetical, but counsel did not contest the opinion of the expert about the number of available jobs. This opinion is relevant and reasonably supports the findings of the ALJ on this question. Thus the decision of the ALJ is supported by substantial evidence.

Lilliberg counters that the expert overestimated the number of available jobs and did not give sufficient weight to the limits imposed by the sitting and standing restrictions. In support of this argument, Lilliberg cites Social Security Ruling 96-9p, which provides in relevant part,

> An individual may need to alternate the required sitting of sedentary work by standing (and, possibly, walking) periodically. Where this need cannot be accommodated by scheduled breaks and a lunch period, the

11

> occupational base for a full range of unskilled sedentary work will be eroded. The extent of the erosion will depend on the facts in the case records, such as the frequency of the need to alternate standing and sitting and the length of time needed to stand. [The findings] must be specific as to the frequency of the individual's need to alternate sitting and standing. It may be especially useful in these situations to consult a vocational resource to determine whether the individual is able to make an adjustment to other work.

Lilliberg argues that it is implicit from this ruling that, given the severity of the limits recognized by the vocational expert, there is no substantial evidence supporting the determination of available work.

Neither this ruling, nor the opinion of the vocational expert, forecloses employment for a person with sitting and standing restrictions. The ALJ posed a hypothetical that incorporated physical and psychological restrictions that, as noted previously, are supported by substantial evidence. And this hypothetical included Lilliberg's sitting and standing restrictions. By submitting the hypothetical to a vocational expert, the ALJ consulted a vocational resource to determine the number of available jobs. Notwithstanding the restrictions in the hypothetical, that expert concluded there were significant opportunities for work. Because this opinion supplies substantial evidence, Lillberg's arguments are unavailing.

## III. CONCLUSION

For the reasons discussed above, this Court concludes that the findings of the ALJ are supported by substantial evidence. Thus this Court recommends that the Commissioner's motion for summary judgment be granted[1] and that the case be dismissed with prejudice.

---

[1] In his motion for summary judgment, Lilliberg also argues that the Appeals Council relied on evidence that was not properly in the record. By an order on March 24, 2005, this Court directed that this evidence be removed from the record and destroyed. Even if this evidence prejudicially influenced the

## IV. RECOMMENDATION

Being duly advised of all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT:**

1. Lilliberg's Motion for Summary Judgement (Doc. No. 13) be **DENIED.**

2. The Commissioner's Motion for Summary Judgment (Doc. No. 16) be **GRANTED.**

3. This case be **DISMISSED WITH PREJUDICE.**

Dated this 20th day of January 2006.              s/Jeanne J. Graham

                                                JEANNE J. GRAHAM
                                                United States Magistrate Judge

Pursuant to D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing and serving specific, written objections by February 8, 2006. A party may respond to the objections within ten days after service thereof. Any objections or responses filed under this rule shall not exceed 3,500 words. A District Judge shall make a de novo determination of those portions to which objection is made. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the United States Court of Appeals for the Eighth Circuit.

---

decision of the Appeals Council, the error is not reviewable in this Court, as this Court may only review the decision of the ALJ. 20 C.F.R. § 416.1481; *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992).